IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

MILDRED ISABEL, CHARLES BLACK,     )
EVALINA BLACK, and ELIZABETH       )
GATEN, on behalf of themselves     )
and all similarly situated         )
persons,                           )
                                   )
          Plaintiffs,              )
                                   )
vs.                                )     No.     04-2297 DV
                                   )
VELSICOL CHEMICAL COMPANY,         )
                                   )
          Defendant.               )

---

REPORT AND RECOMMENDATION ON PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION

---

This action involves a claim that the defendant, Velsicol

Chemical Company ("Velsicol"), discharged wastewater containing the

pesticide dieldrin into Cypress Creek, which resulted in soil

contamination of properties downstream.  Before the court is the

October 19, 2005 motion of the plaintiffs, Mildred Isabel, Charles

Black, Evalina Black and Elizabeth Gaten, seeking a determination,

pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure,

that this action may be maintained as a class action on behalf of

the following class:

> The named plaintiffs and all similarly situated Tennessee
> property owners that either own or lease property located
> directly along the banks of the area commonly known as
> "Cypress Creek" in North Memphis, Shelby County,
> Tennessee whose land has been affected by the presence of

elevated levels of Dieldrin in their soil.

(Pls.' Reply Br. in Supp. of Class Certification at 1.)[1]  The
motion was referred to the United States Magistrate Judge for a
report and recommendation.

The magistrate judge held oral argument on April 11, 2006.
Present at the hearing were Bruce Kramer, Quitman Ledyard, and
Murray Wells, counsel for the plaintiffs, and Gary Shockley, Jill
Steinberg, and Thomas Barnett, counsel for the defendants.  Gary
Hermann, Senior Environmental Project Manager and Velsicol's
Corporate Representative, was also in attendance.  Based on the
briefs submitted by the parties, argument of counsel, and the
record as a whole, it is recommended that the plaintiffs' motion
for class certification be denied.

As a preliminary matter, it is also recommended that Evalina
Black and Charles Black be dismissed as plaintiffs in this case.
At the hearing, plaintiffs' counsel moved to dismiss Evalina and
Charles Black as plaintiffs because Evalina Black will not be
participating in the case and Charles Black is deceased.
Defendant's counsel did not object to the motion.  Because it is
recommended that Evalina and Charles Black be dismissed, this court

---

[1] Excluded from the proposed class are "the named Defendant,
its agents, affiliates, and employees, the Judge assigned to this
matter and his or her staff."  (Pls.' Mem. in Supp. of Mot. for
Class Certification at 4.)

will not consider evidence pertaining to Evalina and Charles Black in the current motion for class certification. Any further reference to the named plaintiffs relates only to Mildred Isabel and Elizabeth Gaten.

## I.   PROPOSED FINDINGS OF FACT

Velsicol operates a chemical plant at 1199 Warford Street, Memphis, Tennessee. (Hanson Aff. ¶ 2.) From about 1952 to 1964, consistent with the regular practice for industrial plants at that time, Velsicol discharged processed wastewater containing dieldrin into Cypress Creek, a tributary of the Wolf River that runs northwest past the Velsicol plant, through the Cypress Creek neighborhood, and to the Wolf River. (*Id.* at ¶¶ 2-3.) After 1964, Velsicol ceased discharging water into Cypress Creek and began routing its water discharge to the City of Memphis sewage system. (*Id.* at ¶ 3.)

## A.   <u>Testing and Cleanup of Cypress Creek Properties</u>

Since 1989, Velsicol has been operating its Memphis plant under a permit issued by the Tennessee Department of Environment and Conservation ("TDEC"), which subjects Velsicol to regulation by TDEC and the United States Environmental Protection Agency ("the EPA"). (Hermann Aff. ¶ 2; Def.'s Proposed Findings of Fact & Conclusions of Law on Pls.' Mot. for Class Certification at 3.) In 2000, TDEC and the EPA directed Velsicol to investigate possible

3

soil contamination in properties downstream from the plant and adjacent to Cypress Creek. (*Id.*) As part of its investigation, Velsicol divided the area along Cypress Creek into five sub-areas. (Hermann Aff. ¶ 6.)

At the hearing, Velsicol focused on an area designated "Sub-Area III," which includes properties along a concrete-lined portion of Cypress Creek from Jackson Avenue, near the Velsicol plant where the water was discharged, to Evergreen Street. (*See id.*) Although most of the arguments presented by Velsicol relate to Sub-Area III, the plaintiffs' proposed class definition does not exactly overlap with Sub-Area III. The plaintiffs' proposed class definition may not be limited to that particular segment of Cypress Creek. Sub-Area III also includes some properties that do not abut Cypress Creek and would not be included in the proposed class.[2] (Def.'s Proposed Findings of Fact & Conclusions of Law on Pls.' Mot. for Class Certification at 3, n. 4.) Velsicol used Sub-Area III, however, as an area for which it has data and that illustrates its argument as to why class certification should be denied.

The properties in Sub-Area III include single-family and multi-family residences, apartment buildings, commercial

---

[2] In its analysis of dieldrin levels of properties in Sub-Area III, Velsicol appears to provide data for only those properties that abut Cypress Creek. (Hermann Aff. ¶ 17 & Ex. C.)

4

businesses, a church, a school, and vacant lots. Sub-Area III is predominantly residential, however, as 147 of the 177 properties are residential. (Hermann Aff. ¶ 17.) Both of the remaining named plaintiffs, Mildred Isabel and Elizabeth Gaten, live in homes within Sub-Area III. At the hearing, counsel for Velsicol indicated that Isabel and Gaten live within a few blocks of each other at the eastern end of Sub-Area III.

From 2001 to 2004, Velsicol collected soil samples from 117 properties in Sub-Area III that are adjacent to Cypress Creek. (*Id.* at ¶ 17 & Ex. C.) Ninety-five of the properties tested were residential properties. (*Id.*) At the hearing, Velsicol's counsel explained that TDEC instructed Velsicol to collect samples from every third property in Sub-Area III and, if the level of dieldrin detected in the samples exceeded the screening level, to collect additional samples from the surrounding properties. (*See* Hermann Aff. ¶¶ 9-13.) Velsicol's testing revealed a wide range of dieldrin contamination on those 117 properties, from a high level of 47.9 parts per million ("ppm") to a low level of 0.0031 ppm. (*Id.* at Ex. C.)

Sixty-eight of the properties (59 residential, 9 non-residential) tested below the 0.7 ppm screening level.[3] (*Id.*) The

---

[3] The statistics used in Hermann's affidavit and Velsicol's memoranda do not exactly match the data in Exhibit C. At the

5

screening level does not "denote a threshold for health risk, cleanup, or property devaluation." (*Id.* at ¶ 12.) Rather, the screening level is a standard below which TDEC and the EPA believe further investigation of a property is not warranted. (*Id.*) At the hearing, Velsicol's counsel stated that it is unlikely that properties testing below such screening level will require any cleanup. (*See id.* at ¶ 27.) Named plaintiff Elizabeth Gaten lives at 915 Bingham, which tested at 0.64 ppm for dieldrin, below the screening level. (Compl. ¶ 7; Hermann Aff., Ex. C.)

Thirty-five properties (26 residential, 9 non-residential) tested above the 0.7 ppm screening level, but below 3.0 ppm. (Hermann Aff., Ex. C.) The EPA established 3.0 ppm as the level for interim remedial measures. (*Id.* at ¶ 15.) TDEC and the EPA will set a final action level that will determine which properties will be subject to cleanup. (*Id.* at ¶ 22; Def.'s Supplemental Resp. in Opp'n to Pls.' Mot. for Class Certification at 4.)

Finally, fourteen properties (10 residential, 4 non-residential) tested above the 3.0 ppm level for interim remedial measures. (Hermann Aff., Ex. C.) Named plaintiff Mildred Isabel

---

hearing, Velsicol's counsel used the data from Exhibit C in his oral argument and plaintiffs' counsel did not object or make any corrections to the data. Therefore, the court will rely on the data in Exhibit C and defense counsel's representations to the court during the hearing.

lives at 959 Meagher, which tested at 3.75 ppm for dieldrin. (Compl. ¶ 6; Hermann Aff., Ex. C.) Velsicol attempted to perform interim remedial measures at the properties testing above 3.0 ppm, but many of the property owners, including Isabel, denied access to their property. (Hermann Aff. ¶¶ 21 & 25.) When asked in her deposition why she did not allow Velsicol to cleanup her property, Isabel responded, "Why should I? I don't know. I just didn't." (Def.'s Supplemental Resp. in Opp'n to Pls.' Mot. for Class Certification, Ex. 3 at 52.) Velsicol conducted remedial measures by removing surface soil and replacing it with clean soil on the three properties to which it was granted access. (Hermann Aff. ¶¶ 20-21.)

B.   Procedural History

The plaintiffs filed their complaint in Shelby County Chancery Court on April 1, 2004, and Velsicol removed the case to this court on April 26, 2004. The complaint alleges four causes of action under Tennessee law: trespass, nuisance, negligence, and strict liability. (Compl. ¶¶ 33-43.) The complaint alleges that the properties of the named plaintiffs and the members of the proposed class have been devalued by the presence of dieldrin. (*Id.* at ¶ 22.) It also alleges that the named plaintiffs and the members of the proposed class have suffered emotional distress. (*Id.* at ¶¶ 23-24.) The complaint does not allege personal injury.

7

The complaint seeks compensatory damages of over $750,000,000 for diminution of property value and emotional distress. (Compl. Prayer for Relief at ¶¶ 3-5.) The complaint also seeks punitive damages of more than one billion dollars. (*Id.* at ¶ 6.) Finally, the complaint seeks a declaration that Velsicol's acts "have rendered the property owned by the class-members [sic] worthless and inhabitable [sic]." (*Id.* at ¶ 7.) The complaint does not contain a request for injunctive relief, nor have the plaintiffs moved for a preliminary injunction in the two years that the case has been pending. At the hearing, plaintiffs' counsel argued that, even if the complaint does not currently contain a request for injunctive relief, the plaintiffs could simply amend the complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure. To date, however, the plaintiffs have not amended their complaint to include a request for injunctive relief.

## II. PROPOSED CONCLUSIONS OF LAW

On October 19, 2005, the plaintiffs filed the motion for class certification currently before the court. Within the framework of Federal Rule of Civil Procedure 23, the district court has broad discretion in determining whether an action should be certified as a class action. *Craft v. Vanderbilt Univ.*, 174 F.R.D. 396, 401 (M.D. Tenn. 1996) (citing *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988)). Before certifying a class,

district courts must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met. *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1078-79 (6th Cir. 1996) *quoting General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982).

Rule 23 provides a two-part test for class certification. The burden of proof is on the plaintiff to establish that the lawsuit is maintainable as a class action. *Ball v. Union Carbide Corp.*, 385 F.3d 713, 727 (6th Cir. 2004); *In re Am. Med. Sys. Inc.*, 75 F.3d at 1079 (6th Cir. 1996); *Bostick v. St. Jude Med., Inc.*, 2004 WL 3313614 at * 5 (W.D. Tenn. 2004). First, a plaintiff seeking class certification must meet the threshold requirements of Rule 23(a) of the Federal Rules of Civil Procedure. The plaintiff must show that:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). Second, the plaintiff must demonstrate that the action falls within one of the three types of actions described in Rule 23(b), which determines whether a class action is maintainable.

A.    The Threshold Requirements of Rule 23(a)

1.    Impracticable Joinder of All Members

Rule 23(a)(1) requires that a proposed class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). The impracticability of joinder for class action purposes is not determined by employing a strict numerical test. *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079. "When class size reaches substantial proportions, however, the impracticability requirement is usually satisfied by the numbers alone." *Id.* (citation omitted). Generally, the numerosity requirement is fulfilled when the number of class members exceeds forty. *See e.g. Stewart v. Abraham,* 275 F.3d 220 (3d Cir. 2001)("[G]enerally, if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.") In addition, the numerosity requirement is fulfilled where the exact size of the class is not known, but general knowledge and common sense indicates that the class is large. *Olden v. LaFarge Corp.*, 203 F.R.D. 254, 269 (E.D. Mich. 2001) *aff'd.* 383 F.3d 495 (6th Cir. 2004). Plaintiffs argue that the class includes "several hundred property owners" downstream from the Velsicol plant. (Pls.' Mem. in Supp. of Mot. for Class Certification at 8; Compl. ¶ 26.)

Here, it is unclear whether the numerosity requirement is met because the proposed class is not sufficiently defined. *See DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)("It is

elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.").  As written, the proposed class includes "property owners that either own or lease property located directly along the banks of the area . . . whose land has been *affected* by the presence of *elevated* levels of Dieldrin in their soil." (Pls.' Reply Br. in Supp. of Class Certification at 1, emphasis added.) Absent some further definition of "affected" and "elevated levels of Dieldrin," the court can only speculate as to the number of members of the proposed class.  If only those properties with a level of 3.0 ppm or higher are "affected," then only fourteen of the 117 properties tested in Sub-Area III would be members of the class.  Fourteen property owners would not satisfy the numerosity requirement.  Joinder would be more practicable with fourteen property owners.

At the hearing, plaintiffs' counsel argued that "affected" properties would include any property subject to trespass by dieldrin.  In addition, plaintiffs' counsel argued that any amount of dieldrin would be an "elevated" level.  (*See* Pls.' Reply Br. In Supp. of Class Certification at 6-7.)  As the plaintiffs describe the proposed class definition, the class would include all 117 properties tested in Sub-Area III, ranging in levels of dieldrin from 0.0031 ppm to 47.9 ppm, and could also possibly include other

properties that have not yet been tested or are not within Sub-Area III. As defined by the plaintiffs at the hearing, the proposed class would satisfy the numerousity requirement of Rule 23(a). Even if the court were to accept the plaintiffs' explanation of the proposed class definition, however, the remaining requirements of Rule 23(a) are not met.

2.    Questions of Law and Fact Common to the Class

This requirement is ordinarily referred to as the commonality test. The commonality test "is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1080 (quoting Newberg & Alba Conte, *Newberg on Class Actions*, § 3.10, at 3-50 (3d ed. 1992)). Plaintiffs claim that common issues of law and fact include: (1) whether Velsicol discharged dieldrin into Cypress Creek; (2) whether Velsicol intentionally or knowingly polluted the class members' property; (3) whether Velsicol's actions diminished the value of the class members' property; and (4) how the class members' losses should be measured. (Pls.' Mem. in Supp. of Mot. for Class Certification at 10.)

In its response, Velsicol argues that individual issues overwhelm any asserted common question. Velsicol argues that those individual issues include the level of dieldrin at each property, the date of discovery of the presence of dieldrin, whether each

class member owns or leases the property, the length of residence at each property, the condition of the property, each class member's exposure to dieldrin in the soils, the reasonableness of each class member's fear of future disease, each property's qualification for interim remedial measures, each class member's consent to or refusal of interim measures, each class member's failure to mitigate, and damages. (Def.'s Preliminary Resp. in Opp'n to Pls.' Mot. for Class Certification at 9-10; Def.'s Supplemental Resp. in Opp'n to Pls.' Mot. for Class Certification at 7-8.) Although the court agrees with Velsicol that individual issues predominate (see discussion below with respect to Rule 23(b)(3)), the court concludes that the commonality factor is fulfilled because the proposed class members share at least one common issue: Velsicol's discharge of dieldrin into Cypress Creek.

3.    Typicality of Claims and Defenses of the Representative Parties as Compared to the Class

Rule 23(a)(3)'s typicality requirement requires that "claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3).

> Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct.   In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff.   Thus, a plaintiff's claim is

> typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.

*In re Am. Med. Sys., Inc.*, 75 F.3d at 1082 (6th Cir. 1996) (quoting 1 *Newberg*, *supra*, § 3.13, at 3-76). "A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *Id.*

Velsicol argues that the claims of the named plaintiffs are not typical to the claims of the proposed class members. In particular, Velsicol argues that Isabel and Gaten's claims will not be typical of any proposed class members who rent their property or of any proposed class members who rent or own non-residential property. Velsicol also claims that, as in *Ball v. Union Carbide Corp.*, 385 F.3d 713 (6th Cir. 2004), there is no "typical" resident of the Cypress Creek neighborhood because a variety of individual factors will affect their claims. *See id.* at 727 (affirming the district court's denial of class certification in an environmental injury case for lack of commonality and typicality because "each individual plaintiff, if he or she has a claim, has a highly individualized claim based on his or her total exposure time, exposure period, medical history, diet, sex, age, and a myriad of

other factors.")

The court agrees with Velsicol that the wide range of dieldrin levels and the variety of individual responses to the alleged contamination may affect the proposed plaintiffs' claims for emotional distress and Velsicol's possible defense of failure to mitigate damages. For example, the reasonableness of an emotional distress claim may depend upon the actual contamination discovered on a class member's property, which ranges from 0.0031 ppm to 47.9 ppm on properties that have already been tested.[4]  In addition, Isabel refused to permit remediation of her property, whereas three other proposed class members did allow such remediation.

The most relevant differences, however, include the fact that the named plaintiffs own residential properties and did not allege any personal injury claims.  Isabel and Gaten may not advance the same interests as class members that lease their property or that own or lease commercial properties.  Isabel and Gaten also do not have the same interests of class members who may have personal injury claims.  Those who fail to opt out of the class action would

---

[4] Notably, Isabel and Gaten do not claim to have been diagnosed with, been treated for, or sought treatment for any mental condition related to claimed fear of exposure to any chemical.  (Def.'s Supplemental Resp. in Opp'n to Pls.' Mot. for Class Certification at 12.)  This may differentiate the named plaintiffs from proposed class members who have sought such treatment.

be bound by any adverse judgment and might be barred from bringing a subsequent cause of action for personal injury. *See e.g. Thompson v. Am. Tobacco Co., Inc.*, 189 F.R.D. 544, 550-51 (D. Minn. 1999)(noting that "[t]his possible prejudice to class members is simply too great for the Court to conclude that the named Plaintiffs' interests are aligned with those of the class.") Accordingly, the court agrees with Velsicol that the claims of the named plaintiffs are not typical of the proposed class.

4.    Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). This rule has two requirements. First, "the representative must have common interests with unnamed members of the class." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083. Second, "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Id.* The adequate representation requirement "overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." *Id.*

As discussed above, Isabel and Gaten do not have common interests with all unnamed members of the proposed class. In addition, the court questions whether the representatives will

vigorously prosecute the interests of the class. At the hearing, Velsicol's counsel played portions of the named plaintiffs' videotaped depositions, in which both Isabel and Gaten appeared disinterested in the contamination of their properties and in the state of the litigation. Isabel testified at her deposition that she has not investigated the levels of contamination found at her property, she does not know anything about Velsicol's sampling of other properties, and she has not made any efforts to investigate her claims in the lawsuit. (Def.'s Supplemental Resp. in Opp'n to Pls.' Mot. for Class Certification at 13.) Gaten testified that she does not remember the results of the Velsicol's soil sampling at her property, she has not made any effort to investigate her claims, and she does not know what her lawyers are asking for in the lawsuit.[5] (*Id.* at 14.)

For the reasons set forth above, it is submitted that the

_____

[5] Velsicol also alleges that plaintiffs' counsel has not vigorously prosecuted the action. *See id.* at 14-16 (noting that plaintiffs' counsel included a named plaintiff who had died prior to the filing of the complaint and that plaintiffs' counsel delayed for more than one year when filing the motion for class certification, responding to Velsicol's First Request for Production of Documents, and scheduling the depositions of the class representatives). Plaintiffs' counsel have submitted affidavits to demonstrate their qualifications. *See* Pls.' Mem. in Supp. of Mot. for Class Certification at Ex. A-D. Because the court has found, on other grounds, that the adequate representation factor has not been met, the court declines to address this argument.

plaintiffs have not met the prerequisites of Rule 23(a) necessary for class certification.

B.    Whether The Action May Be Maintained Under Rule 23(b)

Even if the prerequisites of Rule 23(a) are met, the plaintiffs also have the burden of meeting one of the three criteria listed in 23(b). A class action will be maintained only if one of the criteria of Rule 23(b) is satisfied. In their October 19, 2005 motion to certify a class, the plaintiffs seek certification under Rule 23(b)(2) and (3). In their reply memorandum and at the hearing, however, the plaintiffs claimed, without elaboration, that class certification would also be appropriate under Rule 23(b)(1).

1.    Subsection (1) of Rule 23(b)

Under Rule 23(b)(1), a class action may be maintained if the prosecution of separate actions by individual class members would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests[.]

FED. R. CIV. P. 23(b)(1). Certification under subsection (1) of Rule 23(b) is proper when the prosecution of separate actions would

result in inconsistent standards for the defendants or be dispositive of the interests of non-parties. The plaintiffs did not present any arguments in their briefs or at the hearing concerning why class certification would be appropriate under subsection (1), which is their burden to prove. Accordingly, and because the court does not see any reason why separate actions would create inconsistent standards for the defendant or be dispositive of non-parties' interests, it is submitted that the proposed class action may not be maintained under Rule 23(b)(1).

2. Subsection (2) of Rule 23(b)

Similarly, the proposed class action also may not be maintained under Rule 23(b)(2). Under subsection (2), a class action may be maintained if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." FED. R. CIV. P. 23(b)(2). Rule 23(b)(2) is appropriate in cases where the predominant relief sought is declaratory or injunctive in nature. *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 447 (6th Cir. 2002). Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." FED. R. CIV. P. 23, Advisory Committee Notes.

Here, the plaintiffs do not demand injunctive relief in the

complaint. Although the plaintiffs claim that the complaint does contain a request for injunctive relief, they only cite to a factual allegation that "the detection of Dieldrin in the soil above normal levels requires removal of the Dieldrin or evacuation of the premises." (Compl. ¶ 20.) Such an allegation does not constitute a request for injunctive relief. Velsicol notes that there is no ongoing discharge to enjoin, since Velsicol has not discharged wastewater into Cypress Creek in over forty years. Velsicol also notes that plaintiffs cannot seek an injunction requiring remediation, because Velsicol has been investigating dieldrin contamination for several years under the supervision of the state and federal government and has already implemented remedial measures, which named plaintiff Isabel has refused. (Def.'s Supplemental Resp. in Opp'n to Pls.' Mot. for Class Certification at 16.) Furthermore, the plaintiffs have not amended the complaint to include a request for injunctive relief nor have they filed a motion for preliminary injunction in the two years that the case has been pending.

Although the plaintiffs seek a declaration that Velsicol's actions rendered the class members' properties worthless and uninhabitable, the declaratory relief sought in the complaint is not the predominant relief sought by the plaintiffs. (Compl. Prayer for Relief ¶ 7.) In contrast, the plaintiffs seek $1.75

billion in damages. In addition, the declaratory relief itself relates to the money damages suffered by the plaintiffs due to a decrease in their property values. Such declaratory relief does not "correspond" to injunctive relief as required by Rule 23(b)(2). *See* FED. R. CIV. P. 23, Advisory Committee Notes ("Declaratory relief 'corresponds' to injunctive relief when as a practical matter, it affords injunctive relief or serves as a basis for later injunctive relief.")

This case is distinguishable from the case cited by the plaintiffs, *Olden v. LaFarge Corp.*, 383 F.3d 495 (6th Cir. 2004), which upheld the district court's certification of a class under Rule 23(b)(2) even though the defendant argued that individualized money damages overwhelmed the plaintiffs' request for injunctive relief. In *Olden*, the plaintiffs sought an injunction requiring the defendant to fund a medical monitoring program, repair any damage to the plaintiffs' property, improve the operation of the plant to eliminate emissions, and refrain from allowing emitted substances to be deposited on the plaintiffs' property. *Id.* at 498. In upholding certification of the class, the *Olden* court noted that the defendant was "underestimating the importance of the injunctive relief." *Id.* at 510.

Here, the plaintiffs seek no injunctive relief and the defendant's injurious actions are not ongoing, as in *Olden*. In

21

addition, the declaratory relief sought in this case relates solely to the monetary damages that the plaintiffs may claim for the diminished value of their properties and does not "correspond" to injunctive relief. Therefore, the declaratory relief sought here is distinguishable from the kind of injunctive relief that the *Olden* court deemed sufficient to affirm maintenance of a class action under Rule 23(b)(2). Accordingly, it is submitted that the declaratory relief contained in the complaint is clearly outweighed by the damages sought by the plaintiffs, and the proposed class action may not be maintained under Rule 23(b)(2).

3.    Subsection (3) of Rule 23(b)

Finally, the proposed class action may not be maintained under Rule 23(b)(3). Under subsection (3), a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). As discussed above with respect to typicality, questions common to the class do not predominate over individual issues so as to justify class certification in this case. In addition, the plaintiffs must present individualized proof for some of their claims.

The plaintiffs would have to show, for example, that the

different levels of dieldrin, including one as low as 0.0031 ppm, constitute a physical invasion sufficient for trespass. The plaintiffs would also have to show that, given the different dieldrin levels, that there was an unreasonable interference with the use and enjoyment of the properties so as to constitute nuisance. *See generally Church v. General Electric Co.*, 138 F.Supp.2d 169, 180-182 (D. Mass. 2001)(finding class certification inappropriate under Rule 23(b)(3) in a similar case concerning soil contamination downstream from a plant because of the individual issues required to determine nuisance, trespass and damages, such as the extent of contamination on each property and the use of each property).

Claims for emotional distress would also be specific to individual class members. Each class member would be required to prove personal exposure to dieldrin, especially since not all properties along Cypress Creek have been tested. Each class member would also be required to prove that the exposure to a particular level of dieldrin caused emotional distress within the range of that experienced by an ordinary, reasonable person under the circumstances. *See Carroll v. Sisters of St. Francis Health Serv., Inc.*, 868 S.W.2d 585, 594 (Tenn. 1993)(adopting the "actual exposure" approach and outlining the reasonable person standard).

Determining monetary damages for the diminished value of the

class members' properties would also involve individual issues, such as the degree of dieldrin contamination on the property, if any, the residential or commercial nature of the property, whether the proposed class member owns or rents the property, and how long the proposed class member has owned or rented the property.

Finally, as Velsicol points out, the application of affirmative defenses would also involve issues specific to individual class members. *See Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 295 (1st Cir. 2000)(stating that "affirmative defenses should be considered in making class certification decisions"). The statutes of limitations for the plaintiffs' emotional distress and property damage claims begin to run when the injury is discovered or when the injury should have been discovered with reasonable care and diligence. *Quality Auto Parts Co., Inc. v. Bluff City Buick Co., Inc.,* 876 S.W.2d 818, 820 (Tenn. 1994). Therefore, when the statutes of limitations begin to run will depend on each class member's discovery of the injury or receipt of facts sufficient to put him or her on notice. This may vary by class member. Although the statute of limitations issue alone is not determinative, it weighs against class certification under Rule 23(b)(3) when combined with the numerous other individual issues present in this case. *See Waste Mgmt. Holdings,* 208 F.3d at 296 (stating that statute of limitations issues alone

do not compel a finding that individual issues predominate over common issues).

Accordingly, it is submitted that the proposed class action may not be maintained under Rule 23(b)(3) because questions common to the class do not predominate over individual issues.

### III.  RECOMMENDATION

It is recommended that Evalina Black and Charles Black be dismissed as plaintiffs in this case.  It is also recommended that the plaintiffs' motion for class certification be denied because the threshold requirements of Rule 23(a) have not been met and because a class action cannot be maintained under Rule 23(b)(1), (2) or (3).

Respectfully submitted this 24th day of April, 2006.


                                    s/ Diane K. Vescovo
                                   DIANE K. VESCOVO
                                   UNITED STATES MAGISTRATE JUDGE