IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

MILDRED ISABEL, CHARLES BLACK, EVALINA BLACK,
and ELIZABETH GATEN[1], on behalf of themselves
and all similarly situated persons,

    Plaintiffs,

                                      CASE NO. 04-2297 DV

vs.

VELSICOL CHEMICAL CORPORATION,

    Defendant.

_____

**ORDER ADOPTING IN PART THE REPORT AND RECOMMENDATION OF THE
MAGISTRATE JUDGE, DENYING PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION AND DISMISSING EVALINA BLACK
AND CHARLES BLACK AS PLAINTIFFS**

_____

Plaintiffs, private individuals suing on their own behalf and on behalf of similarly situated persons, have moved under Rule 23(c)(1) to certify their action as a class action. This Court referred Plaintiffs' Motion for Class Certification to United Magistrate Judge Diane K. Vescovo for a Report and Recommendation.[2] The Magistrate Judge recommended that Plaintiffs' motion for class certification be denied because Plaintiff failed to meet some of the threshold requirements of Rule 23(a) and met none of the three bases for class certification set forth in

---

[1] The name of the fourth named plaintiff has been spelled both "Gate" and "Gaten" in documents submitted to this Court by both Plaintiffs and Defendant. It appears that Gaten is the correct spelling.

[2] As a preliminary matter, the Magistrate Judge recommended that two of the named plaintiffs, Evalina Black and Charles Black, be dismissed from the case. (Rep. and Recommendation on Pls.' Mot. for Class Certification at 2.) Both parties support the dismissal of the aforementioned plaintiffs. (Pls.' Response and Objection to Rep. and Recommendation on Pls.'s Mot. for Class Certification at 3; Def.'s Response to Pls.' Response and Objection to Mag.'s Rep. and Recommendation on Pls.' Mot. for Class Certification at 6.)

Rule 23(b). (Rep. and Recommendation on Pls.' Mot. for Class Certification at 2.) In their objection to the Magistrate Judge's Report and Recommendation, Plaintiffs concede that certification should be denied, but only on the ground that potential conflicts exist between the representative plaintiffs and other potential class members, making representatives potentially unable to fairly and adequately protect the interests of the class as required under Rule 23(a)(4). (Pls.' Response and Objection to Rep. and Recommendation on Pls.'s Mot. for Class Certification at 1.) Defendant maintains that the Magistrate Judge's Report and Recommendation should be adopted by this Court in its entirety. (Def.'s Response to Pls.' Response and Objection to Mag.'s Rep. and Recommendations on Pls.' Mot. for Class Certification at 6.) For the reasons stated herein, the Court adopts in part the Magistrate Judge's Report and Recommendation, and denies Plaintiffs' motion for class certification.

## I. BACKGROUND

Plaintiffs are landowners with property along Cypress Creek, a tributary of the Wolf River in Memphis, Tennessee.

Defendant Velsicol Chemical Corporation ("Velsicol") is an Illinois corporation which operates a plant at 1199 Warford Street, Memphis, Tennessee. From about 1952 to 1964, the plant's wastewater, containing the then widely used pesticide dieldrin, was discharged into Cypress Creek. After 1964, Velsicol ceased discharging its wastewater into Cypress Creek and began routing its wastewater to the City of Memphis sewage system. Due to concerns about damage to the environment and human health, United State Environmental Protection Agency ("EPA") banned nearly all uses of dieldrin in 1974, and imposed a total ban in 1987.[3]

---

[3] Department of Health and Human Services, Agency for Toxic Substances and Disease Registry, http://www.atsdr.cdc.gov/tfacts1.html.

In 2000, the Tennessee Department of Environment and Conservation ("TDEC") and EPA directed Velsicol to investigate possible soil contamination in properties downstream from the plant and adjacent to Cypress Creek as part of the facility's Corrective Action Program under the Resource Conservation and Recovery Act ("RCRA"). Velsicol's 2001 preliminary study of major street crossings and other public areas located near Cypress Creek, overseen by TDEC and EPA, indicated that some properties adjoining the creek had significant levels of dieldrin in the soil. Based upon these findings, the TDEC ordered further investigation, requiring Velsicol to sample every third residential property and every other non-residential property located in a predominantly residential area designated as "Sub-Area III."

As of February 2006, Velsicol had tested ninety-five of the residential properties and twenty-two of the non-residential properties along Cypress Creek. Dieldrin was found in all of the properties tested, with presence of the chemical ranging from trace amounts to levels sixteen times the 3.0 ppm EPA benchmark requiring interim remedial measures. Forty-nine of the properties tested had dieldrin levels above the "screening level" of .7 ppm set by TDEC, i.e., the threshold concentration above which requires that the property be tested further.

Plaintiffs allege personal and property injury caused by Defendant's past discharge of wastewater containing the pesticide dieldrin into Cypress Creek, resulting in soil contamination of their properties. According to Plaintiffs' Complaint, exposure to above normal levels of dieldrin is known to pose serious long-term health risks and has been linked to cancer, Parkinson's disease, and birth defects. (Compl. ¶ 13, 19.) Plaintiffs bring this lawsuit on behalf of

> The named plaintiffs and all similarly situated Tennessee property owners that either own or lease real property located directly along the banks of the area commonly known as "Cypress creek" in North Memphis, Shelby County,

3

Tennessee whose land has been affected by the presence of elevated levels of Dieldrin in their soil.

(Compl. ¶ 25.)

Plaintiffs filed their complaint in Shelby County Chancery Court on April 1, 2004, and Defendant removed the case to this Court on April 26, 2004. The complaint alleges four causes of action under Tennessee law: trespass, nuisance, negligence, and strict liability. Plaintiffs also claim that the members of the class have suffered emotional distress, manifested by fear for the health and well-being of themselves and others, and fear and concern over the diminished value of their property.

The complaint seeks compensatory damages of over $750 million for diminution of property value and emotional distress. Plaintiffs also seek punitive damages of more than one billion dollars. Finally, the complaint seeks a declaration that Velsicol's acts have rendered the property owned by the class-members worthless and uninhabitable. The complaint does not contain a request for injunctive relief, although Plaintiffs assert that it is their intent to seek injunctive relief immediately upon certification of the proposed class. (Pls' Reply Brief in Support of Class Certification, at 8.)

## II. LEGAL STANDARD

In order to be certified as a class, the representative parties must satisfy the four prerequisites set forth in Fed. R. Civ. P.23(a) and at least one of the three conditions described in Fed. R. Civ. P. 23(b).

Rule 23(a) establishes the prerequisites for class certification. The Rule provides as follows:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the

4

claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(b)(1).

Rule 23(b) describes three sets of conditions, at least one of which must be satisfied for a class action to be maintained. Under Rule 23(b)(1), a class action may be maintained if the prosecution of separate actions by individual class members would create a risk of

> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests[.]

Pursuant to 23(b)(2), a class action may be maintained if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).

Finally, 23(b)(3) provides that a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

The burden of establishing each element is on the party seeking certification of the class. Senter v. Gen. Motors Corp., 532 F.2d 511, 520 (6th Cir. 1976). The moving party may not merely repeat the language of Rule 23(a). Weathers v. Peters Realty Corp., 499 F.2d 1197, 1200 (6th Cir.1974). Rather, the party must adequately state the facts that indicate each requirement of the rule is fulfilled. Id.

The Court has broad discretion in determining whether an action should be certified as a class action. Craft v. Vanderbilt Univ., 174 F.R.D. 396, 401 (M.D. Tenn. 1996) (citing Sterling v. Velsicol Chem. Corp., 855 F.2d 1188, 1197 (6th Cir. 1988). Before certifying a class, the Court must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met. In re Am. Med. Sys. Inc., 75 F.3d 1069, 1078-79 (6th Cir. 1996) (quoting Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982). However, in assessing the plaintiff's petition, the court inquires solely into whether the requirements of Rule 23 are met and not into the merits of the case or whether the plaintiff has stated a cause of action. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1982). The Court will discuss each of the Rule 23 requirements in turn.

**III. DISCUSSION**

A. Numerosity

The first of the 23(a) prerequisites, commonly know as numerosity, requires that the class be sufficiently large to make joinder of all members impracticable. The plaintiff has the initial burden of showing the size of its class. Cash v Swifton Land Corp., 434 F.2d 569, 571 (6th Cir. 1970). While such showing must be more than mere allegation and not be purely speculative, Plaintiff need not show the precise number of members in the class. See Demarco v. Edens, 390 F.2d 836, 845 (2d Cir. 1968); Barlow v. Marion County Hosp.l Dist., 88 F.R.D. 619, 625 (M.D. Fla.1980).

The impracticability of joinder in this context is not determined by employing a strict numerical test. Am. Med. Sys., 75 F.3d at 1079. "When class size reaches substantial proportions, however, the impracticability requirement is usually satisfied by the number alone." Id. When the class is small, the number of members is only one of several considerations. See Demarco v. Edens, 390 F.2d 836, 845 (2d Cir. 1968) ("determination of practicability should

depend on all circumstances surrounding the case."). Relevant circumstances other than number include judicial economy arising from avoidance of a multiplicity of actions; geographic disbursement of class members; size of individual claims; financial resources of class members; the ability of claimants to institute individual suits; and requests for prospective injunctive relief which would involve future class members. Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 3:6 (4th ed.) (Westlaw database CLASSACT 3:6, updated June 2006).

Generally, the numerosity requirement is fulfilled when the number of class members exceeds forty. See, e.g., Stewart v. Abraham, 275 F.3d 220 (3d Cir. 2001) In addition, the numerosity requirement is fulfilled where the exact size of the class is not known, but general knowledge and common sense indicates that the class is large. Olden v. LaFarge Corp., 203 F.R.D. 254, 269 (E.D. Mich. 200`) aff'd. 383 F.3d 495 (6th Cir. 2004).

Once the plaintiff has made a prima facie showing of numerosity in the complaint, the burden shifts to the defendant to show insufficient size of the class. See Hughes v. Jim Walter Res., Inc., 94 F.R.D. 17 (N.D. Ala. 1981) (holding that numerosity could not be defeated by statistics indicating only a few class members might ultimately prevail on their claims). In its numerosity determination the court may "consider reasonable inferences which can be drawn from the facts before it." Garcia v. Rush-Presbyterian-St. Luke's Med. Ctr., 80 F.R.D. 254, 268 (N.D. Ill. 1978).

In this case, Defendant asserts that it is unclear whether the numerosity requirement is met because Plaintiffs fail to define the class with sufficient clarity and precision. (Def.'s Prop. Find. of Fact and Concl. of Law on Pls.' Mot. for Class Certification at 12). In particular, Defendant asserts that the terms "affected" and "elevated levels" are ambiguous in the context of the clause "property owners . . . whose land has been *affected* by the presence of *elevated levels*

of Dieldrin in their soil." (emphasis added). Id.at 12. In the face of this ambiguity, Defendant asserts, the Court could only speculate as to the number of members of the proposed class. (Id.)

Defendant errs in its analysis of numerosity in a number of respects. Central to Defendant's argument is Defendant's past investigation of soil contamination, focusing on an area it labels 'Sub-Area III." Sub-Area III, however, is not identical to the area along the banks of Cypress Creek which defines Plaintiffs' proposed class. While the 117 properties tested in this sub-area, all of which had some measurable dieldrin contamination, are useful as a starting point for estimating the number of potential claimants, this subset should not be treated as the entire population. There are, in addition, a number of properties within the other four sub-areas of the total area alongside Cypress Creek, as well as the 60 untested properties within Sub-Area III.

Defendant also gives undue legal significance to the threshold levels established by the TDEC and EPA as indicators of the appropriateness of further investigation or remediation. While these thresholds might arguably be instructive in determining injury, there is no reason to believe they would be dispositive of liability. More importantly, while deliberation as to what level of contamination is sufficient to establish injury would be central to any judgment of the merits in this case, it has no place in a certification determination. For this reason, Defendant's emphasis on regulatory thresholds is inappropriate in the present certification context.

Finally, a common sense reading of the phrase "*affected* by the presence of *elevated levels* of Dieldrin" in Plaintiffs' class definition would indicate that nothing more is intended than the unremarkable requirement that class members be injured by Defendant's actions. Unless a claimant can show that the property at issue has *elevated*, i.e., above-normal, *levels* of the contaminant dieldrin, claimant can show no injury. If the levels of dieldrin on a claimant's property, even if *elevated*, do not adversely *affect* the owner or property, i.e., diminish the

property value or cause personal harm, then similarly, no injury can be said to exist, and therefore no liability found.

Determination of injury is central to a judgment on the merits but has no place in the decision regarding certification of a proposed class. Inclusion by Plaintiffs of an injury requirement in the class definition, neither enhances nor diminishes the validity of that definition. Thus while the phrase is imprecise and, more importantly, superfluous, it does not render the class definition fatally ambiguous.

Given the known numbers of properties alongside the Creek, and the likelihood of significant contamination indicated by the testing conducted thus far, it is reasonable to infer that the class size is sufficiently large to make joinder impracticable. The Court therefore concludes that Plaintiffs have made a <u>prima facie</u> showing of numerosity, and Defendant has failed to rebut this showing of the impracticability of joinder.

B. Commonality[4]

The requirement that there be questions of law or fact common to the class is generally referred to as the commonality test. This test "is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class." <u>In re Am. Med. Sys., Inc.</u>, 75 F. 3d at 1080 (quoting Alba Conte & Herbert B. Newberg, <u>Newberg on Class Actions</u> § 3:10 (3d ed. 1992)).

Plaintiffs claim that common issues of law and fact include 1) whether Velsicol discharged dieldrin into Cypress Creek; 2) whether Velsicol intentionally or knowingly polluted the class members' property; 3) whether Velsicol's actions diminished the value of the class

---

[4] The Court in this subsection adopts, in large part, the proposed conclusions of law contained in the Magistrate Judge's Report and Recommendation.

members' property; and 4) how the members' losses should be measured. (Pls.' Mem. in Supp. of Mot. for Class Certification, at 10.)

In its response, Velsicol argues that individual issues overwhelm any asserted common question. Velsicol argues that those individual issues include the level of dieldrin at each property, the date of discovery of the presence of dieldrin, whether each class member owns or leases the property, the length of residence at each property, the condition of the property, each class member's exposure to dieldrin in the soils, the reasonableness of each class member's fear of future disease, each property's qualification for interim remedial measures, each class member's consent to or refusal of interim measures, each class member's failure to mitigate, and damages. (Def.'s Prelim. Resp. in Opp'n to Pls.' Mot. for Class Certification, at 9-10; Def's Supplemental Resp. in Opp'n to Pls.' Mot. for Class certification, at 7-8.) Although there are numerous issues which must be decided on an individual basis, the the commonality factor is nonetheless fulfilled because the proposed class members share at least one common issue: Velsicol's discharge of dieldrin into Cypress Creek which has potentially damaged the class members in some way.

C. Typicality

Rule 23(a)(3) requires that "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are not required to be identical to the claims of the putative class to meet this hurdle. <u>Gen. Tel. Co. v. Falcon</u>, 457 U.S. 147, 155 (1982). To satisfy the typicality requirement a sufficient relationship must exist between the injury to the named plaintiffs and the conduct affecting the class, such that "the court may properly attribute a collective nature to the challenged conduct." <u>In re Amer. Med. Sys. Inc.</u>, 75 F.3d 1069, 1082 (6th Cir.1996). "[A] plaintiff's claim is typical if it arises from the

same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." Id.

Velsicol proffers a variety of reasons why the named plaintiffs should not be considered typical. First, since Plaintiffs Mildred Isabel and Elizabeth Gaten are homeowners, their interests will not necessarily be aligned with class members who are renting their homes or those who own or occupy non-residential property.[5] Second, Velsicol argues that the wide range of dieldrin levels on the various properties, the variety of types of properties involved, and other circumstantial differences among the claimants preclude a finding of typicality. Plaintiffs counter these arguments by asserting that the typicality requirement is easily met because the case simply involves determining which properties have been affected by Defendant's wastewater discharge and providing appropriate relief.

The arguments on both sides fail to address the core issue of typicality. Representative plaintiffs need not present claims identical to those of the class as a whole, but there must exist sufficient alignment of claims such that the interests of the class are served. Specifically, each injury raised in a class action complaint must be claimed by a representative plaintiff.

The case at bar raises two distinct types of potential injury: property and emotional.[6] Litigation strategy, the type of evidence required, and the underlying theory

---

[5] Whether the disparate interests of homeowners and renters is of any significance here is unclear. Plaintiffs' proposed class definition refers to "property owners that either own or lease property." This is an oxymoron which leaves indeterminate whether renters could be considered a part of the class or not. However, it is not the label we attach to the claimant but the nature of the injury claimed that ultimately matters, as the discussion, *infra,* of the types of injury makes plain.

[6] Only property and emotional injury are specifically raised in the complaint, but where toxic chemicals are present the threat of physical injury is necessarily in the background. In fact, the threat of bodily harm is presumably the primary rationale behind any claim of property devaluation or emotional distress.

of causation is distinct for each of these three categories of harm. Decisive here is the fact that named plaintiffs, Isabel and Gaten, do not claim emotional injury, one of the broad classes of injury raised in Plaintiffs' complaint. This misalignment of interests between representative plaintiffs and the larger class is exactly what typicality is intended to prevent. Because the claimants named are not sufficiently typical, Plaintiffs have failed to satisfy a necessary prerequisite to certification of the proposed class action.

D. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This is an essential due process requirement, since a final judgment will be binding on all members of the class. In re Am. Med. Sys., Inc, 75 F.3d at 1083. Adequacy of representation requires both that class counsel be qualified, experienced and generally able to conduct the litigation; and that representative plaintiffs' interests are not antagonistic to the other members of the class, i.e., the named plaintiffs appear able to "vigorously prosecute the interests of the class." Id. The issue of adequate representation is often intertwined with typicality in that if the representative plaintiff is atypical, sufficient incentive to pursue the claims of the other class members may be lacking.

As discussed above, Plaintiffs Isabel and Gaten do not claim emotional injury, and thus do not share the interests of a presumptive subset of the larger class. Additionally, the Magistrate Judge notes that the representative claimants expressed a marked indifference regarding this litigation, reflecting a possible lack of motivation in pursuing the interests of the class. (Report and Recommendation on Pls.' Motion for Class Certification, at 16-17).

The named plaintiffs also do not allege physical injury. This raises the additional concern that class members who do suffer physical injury as a result of soil contamination by Defendant

may be precluded from raising such a claim in later litigation.[7] Thus a final judgment in Plaintiffs' favor could be construed as antagonistic to the future interests of certain members of the proposed class.

For the foregoing reasons, and in light of Plaintiffs' concession that "a reasonable basis for denying the [certification] motion under Rule 23(a)(4) exists," the Court concludes that Plaintiffs have not met the adequacy of representation prerequisite necessary for class certification. (Pls.' Resp. and Objection to Report and Recommendation on Pls.' Mot. for Class Certification at 1.)

E. Conditions for Maintaining Class Action Under Rule 23(b)

1. Subsection (1) of Rule 23(b)[8]

Certification under subsection (1) of Rule 23(b) is proper when the prosecution of separate actions would result in inconsistent standards for the defendants or be dispositive of the interests of non-parties. Plaintiffs did not present any arguments in their briefs or at the hearing concerning why class certification would be appropriate under 23(b)(1), which is their burden to prove. Accordingly, and because there is no apparent reason to expect that separate actions would create inconsistent standards for the defendant or be dispositive of non-parties' interests, the Court finds that the proposed class action may not be maintained under Rule 23(b)(1).

2. Subsection (2) of Rule 23(b)[9]

Under subsection (2), a class action may be maintained if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making

---

[7] Under the doctrine of res judicata, parties are barred from litigating in a subsequent action issues that were or could have been litigated in an earlier proceeding. See Kremer v. Chemical Constr. Corp., 456 U.S. 461, 466-67 n.6 (1982).

[8] The Court, in this subsection, adopts, in large part, the proposed conclusions of law contained in the Magistrate Judge's Report and Recommendation.

[9] The Court, in this subsection, adopts many of the proposed conclusions of law contained in the Magistrate Judge's Report and Recommendation.

appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) is applicable in cases where the predominant relief sought is declaratory or injunctive in nature. Coleman v. Gen. Motors Acceptance Corp., 296 F.3d 443, 447 (6th Cir. 2002). Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages." Fed. R. Civ. P. 23, advisory committee notes.

Plaintiffs do not demand injunctive relief in their complaint. However, they maintain that their action is essentially injunctive in nature. ( Pls.' Reply Br. in Support of Class Certification at 7-8.) This assertion is supported only by reference to a factual allegation that "the detection of Dieldrin in the soil above normal levels requires removal of the Dieldrin or evacuation of the premises." (Compl. ¶ 20.) Plaintiff further maintains that although an injunction has not yet been sought, immediately upon certification Plaintiff intends to have Velsicol enjoined to "remove the trespassing agents from the plaintiff class's property and to restore the land to a condition at least as good as it was prior to the trespass." ( Pls.' Reply Br. in Support of Class Certification at 8.) Finally, Plaintiffs point to their request for a declaration that Velsicol's conduct has diminished the value of affected properties as supporting its 23(b)(2) case. (Id. At 9)

Neither the statement in the Complaint at ¶ 20, nor the statement of intent to seek an injunction at a future date satisfy the requirement that the action be primarily injunctive in nature. Further, Plaintiff has failed to explain to the Court how Defendant has acted or refused to act in such a way as to make injunctive relief necessary, since Velsicol has already begun implementing remedial measures, which one of the named plaintiffs has refused.

Although Plaintiffs seek a declaration that Velsicol's action rendered the class members' properties worthless and uninhabitable, the declaratory relief sought in the complaint is not the

14

predominate relief sought by Plaintiffs. (Compl. Prayer for Relief ¶ 7) In contrast, Plaintiffs seek $1.75 billion in damages. In addition, the declaratory relief itself relates to the money damages suffered by Plaintiffs due to a decrease in their property values. Such declaratory relief does not "correspond" to injunctive relief as required by Rule 23(b)(2). See Fed. R. Civ. P. 23, advisory committee notes ("Declaratory relief 'corresponds' to injunctive relief when as a practical matter, it affords injunctive relief or serves as a basis for later injunctive relief.").

For all of the foregoing reasons, the proposed class cannot be maintained under Rule 23(b)(2).

3. Subsection (3) of Rule 23(b)

Under subsection (3), a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

Defendant Velsicol argues that the numerous issues specific to individual class members predominate over common issues of the class and should preclude certification. The degree of contamination, whether the class member resides on the property, whether the class member rents or owns the property, the length of time the class member has rented or owned the property, and whether the property is residential or commercial are offered as examples of the issues requiring individual adjudication. (Def's Prelim. Resp. in Opp'n to Pls's Mot. for Class Certification, at 16-17.) Regarding claims of emotional injury, Defendant asserts that each class member would be required to prove personal exposure to dieldrin and the extent to which such exposure has caused the alleged injury. Id. at 17. Finally, Velsicol asserts that the application of affirmative defenses, would also involve issues specific to individual class members.

Specifically, Velsicol mentions statutes of limitation governing the filing of emotional distress and property damage claims. When the statutes of limitations period commences, Velsicol asserts, will depend on the individual member's date of the discovery of injury, or receipt of facts sufficient to put a reasonable person on notice. Id. at 18.

This is familiar legal ground for Velsicol and the Court. A quarter century ago, the company faced a similar suit, in this Court, by persons alleging injury resulting from water contaminated by a Velsicol waste disposal site. In affirming the district court's grant of class certification, the Sixth Circuit Court of Appeals offered a number of important insights into Rule 23(b)(3). These insights have been cited frequently in subsequent judicial opinions and are directly pertinent to the motion at bar.[10]

The Sixth Circuit first noted that while some courts had adopted individualization as justification for denying certification in environmental litigation, many others had embraced the class action as the more efficient method of "disposing of a large number of lawsuits arising out of a single disaster or a single disaster or a single course of conduct." Sterling v. Velsicol Chem. Corp., 855 F.2d 1188, 1196 (6th Cir. 1988). In such litigation, the factual and legal issues are generally common to all plaintiffs within the class. Where the defendant's liability can thus be determined on a class-wide basis, "a class action may be the best suited vehicle to resolve such a controversy." Id.

Addressing the particulars of the water contamination case before it, the Court applied these principals to conclude that class action was appropriate for the following reasons: 1) each class member lived in the vicinity of the waste disposal site, 2) each member allegedly suffered damages as a result of using contaminated water, and 3) nearly identical evidence would be

---

[10] The 2003 amendments to Rule 23 have no bearing on the predominance question and in no way undermine the Sixth Circuit Court's analysis in Sterling.

required to establish the level and duration of chemical contamination, causation between the contamination and injury, and causation between the contamination and the defendant's actions. Id. The Sixth Circuit summarized its determination as follows:

> The single major issue distinguishing the class members is the nature and amount of damages, if any, that each sustained. To this extent, a class action … avoid[s] duplication of judicial effort and prevent[s] separate actions from reaching inconsistent results with similar, if not identical, facts.

Id.

Defendant's argument that individual issues are predominant fails in light of the forgoing discussion. The vast majority of matters Defendant points to as requiring individual determination pertain directly to the nature and amount of damages. Even the issue of statutes of limitations, while not addressed directly in the Sterling opinion, falls easily into the category of issues which "may be reserved for individual treatment with the question of liability tried as a class action." Id. As the Sixth Circuit has recently held, in such cases the Court can "bifurcate" the issue of liability from the issue of damages. Olden v. LaFarge Corp., 383 F.3d 495, 509 (6th Cir. 2004). Where liability is found, the issue of damages can be decided by a special master or other appropriate means. Id.

As noted above, the approach of the Sixth Circuit has not been uniformly followed by all courts. Defendant cites several cases in which plaintiffs were deemed to have failed the 23(b)(3) test under similar circumstances. In Ball v. Union Carbide Corp., the Sixth Circuit found Sterling inapplicable on grounds that there were multiple defendants with differing levels of liability. 376 F.3d 554 (6th Cir. 2004). The court in LaBauve v. Olin Corp. found Sterling distinguishable where causation could not be determined on a class-wide basis. 231 F.R.D. 632 (S.D. Ala. 2005). Defendant relies most heavily on Church v. Gen. Elec. Co., which concluded that individual differences

17

pertained not just to damages but to the threshold questions of whether the contamination constitutes a nuisance or trespass, thereby warranting denial of certification under 23(b)(3). 138 F. Supp. 2d 169, 180-82 (D. Mass. 2001).

The <u>Church</u> decision implicitly reveals what is arguably circularity in the reasoning behind the <u>Sterling/Olden</u> approach: Certification should be granted where issues of liability and the fact and extent of injury can be bifurcated. However, a finding of liability *requires* proof of injury. Therefore, liability cannot be decided independent of questions of injury.

While this criticism is valid, it does not undermine the appropriateness of this approach. Rather, it simply makes clear that the bifurcation terminology is perhaps not entirely descriptive. Rule 23(c)(4) provides that the Court may, at its discretion, certify a class action for particular issues and not others. <u>Sterling</u> merely underscores that principle with regard to central issues of liability common to the class as a whole.

Judge Posner, of the Seventh Circuit, has recently weighed in on the controversy surrounding the application of 23(b)(3). See <u>Mejdrech v. Met-Coil Systems Corp.</u>, 319 F.3d 910, 911 (7th Cir. 2003). In the case before it involving soil and groundwater contamination, the Seventh Circuit Court held certification permissible because the essential questions of liability were not complex and that a ruling against Defendant on these questions would not be catastrophic. In order to collect damages, class members would still be required to prove the fact and extent of their individual injuries. The need for such proof serves as a backstop to the class-wide determinations. <u>Id.</u>

The Court finds the basic issues of liability in the instant controversy to be straightforward and common to all members of the proposed class. Further, these issues

are easily bifurcated from the issues of damages and affirmative defenses which must be decided on an individual basis. Thus, while the <u>Ball</u> and <u>LaBauve</u> opinions provide valuable contributions to the predominance debate, their insights are not applicable here. Similarly, <u>Church</u> urges precision in the choice of words, but does not undermine the force of the <u>Sterling</u> reasoning.

For the foregoing reasons, the Court finds that Plaintiffs have satisfied the requirements of Rule 23(b)(3).

IV. ORDER

For the reasons set forth herein, the Court finds that Plaintiffs have failed to satisfy the requirements of typicality and adequacy of representation as set forth in Fed. R. Civ. P. 23(a)(3) and 23(a)(4), respectively. Accordingly, the Court **DENIES** Plaintiffs' motion for class certification.

Based on the consent of the parties, the Court **DISMISSES** Evalina Black and Charles Black as plaintiffs in this case.

**IT IS SO ORDERED** this 20th day of June, 2006

          s/ Bernice Bouie Donald_____
          BERNICE BOUIE DONALD
          UNITED STATES DISTRICT COURT JUDGE